# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.1:10CR390 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION & ORDER |
| | ) | |
| | ) | |
| STEVEN J. TERRY, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

On September 14, 2010, the government filed an Indictment against the defendant, Steven J. Terry. The Indictment grew out of an expansive investigation, conducted over a number of years, into allegations of public corruption and conspiracy in Cuyahoga County, Ohio. Terry, a sitting common pleas judge, is alleged to have received a bribe in exchange for rulings on certain motions pending before him. On March 9, 2011, the grand jury returned a five count Superseding Indictment. Count One charged the defendant with conspiracy to commit Mail Fraud and Honest Services Mail Fraud, in violation of 18 U.S.C. § 1349. Count Two charged the defendant with mail fraud, in violation of 18 U.S.C. § 1341. Counts Three through Five charged the defendant with honest services mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346.

Before the Court is the defendant's motion to dismiss and/or strike. (Doc. No. 32.) By this motion, the defendant seeks to dismiss Counts 1, 3, 4, and 5 of the Superseding Indictment for failure to state an offense and/or strike portions of the

Superseding Indictment as surplusage. The motion is fully briefed. On May 4, 2011, the Court conducted a hearing on the pending motions.[1] The Court is now prepared to rule on the defendant's motion to dismiss.

**Background**

In early 2007, the defendant was appointed to a seat on the Cuyahoga County Court of Common Pleas. It is not in dispute that, on or about April 20, 2007, the defendant announced his candidacy to retain his seat on the Common Pleas Court, nor is it disputed that the defendant was ultimately successful in his election bid.

It is the bargain that he allegedly made to secure his seat that is at the heart of the Superseding Indictment. The government contends that, during his 2007-2008 campaign, the defendant sought and received the support of Frank Russo, then Cuyahoga County Auditor. Russo was a major political figure in Cleveland, and was one of the main targets of the federal government's public corruption investigation.[2] It further maintains that, in exchange for this support, the defendant agreed to provide "favorable official action for the benefit of Russo as requested and as opportunities arose, such as engaging Russo in ex parte communications about pending cases and taking judicial action following those ex parte communications." (Doc. No. 24, Superseding Indictment at ¶ 28.)

Specifically, it is the government's position that in July 2008 the defendant agreed to deny two summary judgment motions in related civil foreclosure

---

[1] Also pending is the defendant's motion in limine to preclude the testimony of Lori Brown and exclude all evidence relating to the Ohio Code of Judicial Conduct (Doc. No. 42), and the government's motions in limine. (Doc. Nos. 35 and 47.) The motions in limine will be addressed in a later Opinion and Order.

[2] Russo has since pled guilty to multiple federal charges, including conspiracy, and has been sentenced to a term of imprisonment.

cases involving American Home Bank (AHB). According to the government, the decision to deny these motions was made at the request of Russo and was intended to benefit a political ally of Russo's, attorney Joe O'Malley, who represented various parties to the related actions and allegedly desired the rulings in order to facility a settlement. It is likely that the government will seek to introduce at trial phone calls between the defendant and Russo, which were intercepted during the course of the investigation into Russo and others, and in which Russo and the defendant discuss the two motions.[3] It is undisputed that, following the rulings, the two actions settled.

**Discussion**

*Defendant's Motion to Dismiss for Failure to State an Offense*

The defendant challenges the sufficiency of the Superseding Indictment, and seeks to have it dismissed for failure to state an offense. He complains that the facts contained in the Superseding Indictment fail to satisfy the Supreme Court's decision in *Skilling v. United States*, 130 S. Ct. 2896 (2010), and that the charging instrument impermissibly relies on the Ohio Code of Judicial Conduct to support a finding of criminal liability. Alternatively, the defendant moves to strike any reference to the judicial code.

The government maintains that the Superseding Indictment meets the modest pleading requirements of Rule 7 of the Federal Rules of Criminal Procedure. Further, it insists that it was careful to follow the language of the Supreme Court's decision in *Skilling*, and is in full compliance with the *Skilling* Court's requirement that honest services fraud charges include the presence of a bribe or kickback. Finally, the

---

[3] The defendant was not a target of the investigation or the wiretaps, which produced these calls.

government represents that its reliance on the judicial code is necessary to establish two essential elements of the crime of honest services fraud.

Rule 7(c)(1) requires that an indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged […].". Fed. R. Crim. P. 7(c)(1). *See United States v. Blandford*, 33 F.3d 685, 704 (6th Cir. 1994) (quoting *United States v. Piccolo*, 723 F.2d 1234, 1238 (6th Cir. 1983) (en banc) (The Sixth Amendment requires an indictment to "inform the defendant of 'the nature and cause of the accusation.'")). It need only contain those facts and elements necessary to inform the accused of the charges so that he may prepare a defense, *see Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006), and protect against double jeopardy. *See United States v. Douglas*, 398 F.3d 407, 413 (6th Cir. 2005). "An indictment is generally sufficient if it 'fully, directly, and expressly […] set[s] forth all the elements necessary to constitute the offense intended to be punished.'" *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) (quoting *United States v. Douglas*, 398 F.3d 407, 411 (6th Cir. 2005)).

The mail fraud statute prohibits individuals from using the mail to carry out a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," 18 U.S.C. § 1341, which includes "a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346.

In 2010, the United States Supreme Court revisited the honest services fraud statute in an effort to clarify and define the contours of the conduct covered by the statute. Specifically, the Court in *Skilling* narrowed the reach of the statute, limiting it to

4

fraudulent schemes involving bribes or kickbacks. *Skilling*, 130 S. Ct. at 2931. In so ruling, the Court refused to include what it considered "amorphous" conduct, including "some schemes of non-disclosure and concealment of material information" courts had previously permitted to fall within the statute. *Id*. at 2932 (internal citation omitted).

Thus, post-*Skilling*, to convict a defendant of honest services mail or wire fraud, the government must prove that: (1) the defendant participated in a scheme to deprive another of the right to honest services; (2) the defendant must participate in the scheme with the intent to defraud; (3) the scheme must use fraud, that is a misrepresentation or concealment of a material fact; (4) the fraudulent scheme must also involve bribery or kickbacks; and (5) the defendant must use the mail or cause another to use the mail in furtherance of the scheme. *United States v. Milovanovic*, 627 F.3d 405, 412 (9th Cir. 2010).

Counts Three through Five of the Superseding Indictment charge that:

> From on or about February 23, 2007, and continuing through on or about November 17, 2008, in the Northern District of Ohio, Eastern Division, STEVEN J. TERRY, Defendant herein, having devised and intended to devise a scheme and artifice to defraud and deprive Cuyahoga County, its citizens and taxpayers, Common Pleas Court and certain litigants, including AHB, of their right to the honest and faithful services of TERRY, through bribery and kickbacks and the concealment of material information, knowingly caused to be delivered by mail according to the direction thereon, mail matter as set forth below.

(Superseding Indictment at ¶ 51.) The Superseding Indictment also identifies the nature of the benefit the defendant was suspected to have received (campaign contribution), and further, in some detail, sets forth the official acts (the ruling on the pending summary

judgment motions in the AHB cases) that the defendant was alleged to have performed in exchange for the benefit he received from Russo.[4]

It is clear from these paragraphs that the Superseding Indictment sets forth all of the elements of the crime of honest services mail fraud under §§ 1341 and 1346, and the specific factual details, including the dates of the offenses and the explanation of the acts involved, are sufficient to inform the defendant of the charge against him so that he may adequately prepare his defense and protect against being twice convicted for the same offense. Further, the inclusion of the existence of a bribe or kickback as part of the alleged fraudulent scheme insures that the charging instrument does not run afoul of *Skilling. Compare United States v. Ford,* No. 08-6169, 2011 U.S. App. LEXIS 7674, at *13 (6th Cir. Apr. 14, 2011) (recommended for full text publication) (conviction for honest services fraud was vacated, pursuant to *Skilling*, due to fact that the fraudulent scheme was "based upon [the defendant's] failure to disclose his financial interests, not bribes or kickbacks.")

The defendant argues, however, that while the government was careful to track the language of *Skilling*, the conduct detailed in the Superseding Indictment:

> describes 'amorphous conduct' such as the Defendant soliciting and accepting gifts, payments and other things of value including financial support for the Defendant's campaign in exchange for the Defendant's favorable action for the benefit of Russo 'as opportunities arose, such as engaging Russo in ex parte communications about pending cases and taking judicial action following those ex parte communications'; 'defrauding the Auditor's Office and Cuyahoga County and its citizens to obtain money and property by means of materially false and fraudulent

---

[4] Count One, charging the defendant with conspiracy to commit honest services mail fraud, contains similar language addressing the nature of the alleged quid quo pro relationship between the defendant and Russo, including the payment of a bribe or kickback, and further sets forth the allegations establishing the existence of a conspiracy. (*See id.* at ¶ 24.)

> pretenses'; concealing 'from certain litigants the fact of his ex parte communications with Russo and the effect of those communications on [Defendant's] ruling.'

(Doc. No. 32 at 19-20 (quoting Superseding Indictment)).

The Court disagrees with the defendant's assessment of the Superseding Indictment. The language clearly describes a fraudulent scheme, wherein the defendant is alleged to have solicited and received things of value, including campaign contributions, in exchange for official acts. While the Court in *Skilling* did not provide a definition of "bribery," the Superseding Indictment clearly describes a bribery scheme where an official takes a thing of value in exchange for an official act. *See United States v. Whitfield*, 590 F.3d 325, 348 (5th Cir. 2009) [5] (cited in *Skilling*) (which defined bribery as "giving things of value to an official 'with intent to influence his vote, opinion, action or judgment on any question, matter, cause or proceeding which may be then pending, or may be thereafter subject to vote, opinion, action or judgment' of the official.") The fact that the charging instrument also contains language relating to concealment and other improper behavior, which, alone, would not be sufficient to support an honest services fraud conviction under *Skilling*, does not take away from the fact that it satisfies Rule 7 and governing law.

In a similar vein, the defendant argues that the receipt of financial support in a campaign in exchange for some unknown action at some unknown time in the future does not constitute a quid quo pro for bribery. However, quid pro quo bribery can be

---

[5] In *Whitfield*, the court relied on the Mississippi bribery statute for its definition. Miss. Code Ann. § 97-11-11. As will be discussed below, Ohio's bribery statute, Ohio Rev. Code § 2921.02(B), describes bribery in a similar fashion.

based on an on-going scheme. *See United States v. Ganim*, 510 F.3d 134, 144 (2d Cir. 2007) (Sotomayor, J.) (cited with favor in *Skilling*) ("[T]he government does not have to prove an explicit promise to perform a particular act made at the time of payment. Instead, it is sufficient if the public official understands that he or she is expected as a result of the payment to exercise particular kinds of influence—i.e., on behalf of the payor—as specific opportunities arose.") (internal citations omitted); *Whitfield*, 590 F.3d at 353 (Ongoing bribery scheme satisfied the honest services fraud statute because "[t]he law only requires that the Government prove the 'specific intent to give or receive something of value *in exchange* for an official act' to be performed sometime in the future.") (internal citation omitted.) While it remains to be seen at trial whether the government can connect the campaign contribution to the rulings in question, it is enough on a motion to dismiss that the Superseding Indictment pleads a bribery scheme that falls within the framework of *Skilling*.[7]

For his third attack on the Superseding Indictment, the defendant suggests that the *actus reus* for the crime of honest services mail fraud is missing because the official act the defendant is alleged to have committed was required as a matter of law. It is the defendant's position that, because of the existence of questions of material facts relating to the pending summary judgment motions, the defendant was obligated by law to deny them. *See* Fed. R. Civ. P. 56.

---

[7] The defendant also maintains that the receipt of a campaign contribution, alone, does not constitute a bribe. While this is true, the act of receiving things of value, including campaign contributions, was not pled in a vacuum. Instead, the government alleges that this act was the "quid" for the "quo," which was the alleged performance of certain official duties (i.e., the ruling on the summary judgment motions in the AHB cases). Again, at trial, the government will have to prove the connection between these two acts at trial, but together, if proven, they constitute bribery.

The defendant's argument is premised on the mistaken assumption that the government must prove that the fraudulent scheme resulted in actual harm. Rather, under § 1346, it is only necessary to plead that the fraudulent scheme had the capacity to harm. *See United States v. Rybicki*, 354 F.3d 124, 145-46 (2d Cir. 2003) (rejecting the argument that actual harm must be present, and applying the "materiality" test to determine whether the misrepresentations were material and likely to cause the reasonable person to change his conduct). In other words, "[p]otential harm is the only prerequisite[.]" *United States v. Coffey*, 361 F. Supp. 2d 102, 118 (E.D.N.Y. 2005). *See, e.g., United States v. Fischl*, 797 F.2d 306, 311 (6th Cir. 1986) (in mail fraud scheme, the court rejected the argument that dismissal was necessary because no actual harm befell the state or public, finding that it was enough that the fraudulent scheme intended to deceive). *Accord United States v. Mack*, 159 F.3d 208, 215-16 (6th Cir. 1998) ("Because Mack was charged as a public official with depriving MANCI and the citizens of Ohio of their intangible right to his honest services, we reject his contention that the government was required […] to prove that his conduct caused 'concrete business harm.'"). *See also United States v. Warshak*, 631 F.3d 266, 310 (6th Cir. 2010) (finding that the mail fraud statute does not require proof that the intended victim was actually defrauded). *But see Skilling*, 130 S. Ct. at 2937 (Scalia, concurring) (noting the split in the circuits as to the need to establish actual harm to the State).

Moreover, it is well settled that "[i]n order to convict for conspiracy, it is not necessary to prove that the conspiracy was successful." *Collins v. United States*, 284 F.2d 517 (6th Cir. 1960) (citing *Blum v. United States*, 46 F.2d 850 (6th Cir. 1931)). *See United States v. Jain*, 93 F.3d 436, 441 (8th Cir. 1996) (quoting *United States v.*

9

*D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994) (In a mail fraud action, the court observed that "[e]ssential to a scheme to defraud is fraudulent intent. The scheme to defraud need not have been successful or complete.")). Thus, the fact that the legal rulings may very well have been the same without the bribe does not change the fact that the Superseding Indictment contains a properly pled bribery scheme.

Finally, the defendant argues that the Superseding Indictment fails to state an offense because it incorporates the canonical provisions of the Ohio Code of Judicial Conduct. It is the defendant's contention that by including the judicial code in the Superseding Indictment, the government is impermissibly attempting to base criminal liability on ethical rules that lack the force of law. Because this argument most neatly fits into the Court's discussion of the defendant's alternative motion to strike, the Court shall reserve its analysis of this argument for the discussion below. Notwithstanding this final argument, the Court finds that the Superseding Indictment meets the pleading requirements of Rule 7 and is in accord with the Supreme Court's teachings in *Skilling*. Consequently, the defendant's motion to dismiss is DENIED.[8]

*Defendant's Alternative Motion to Strike Surplusage*

Paragraph 17 of the Superseding Indictment provides:

The County, the State and their citizens and taxpayers, and litigants had an intangible right to the honest services of Defendant TERRY. As a Common Pleas Judge, TERRY had a fiduciary relationship with the State, the County, its citizens, and the litigants appearing before him. *TERRY was required to follow each Cannon of The Ohio Code of Judicial*

---

[8] Indeed, there is considerable overlap with the issues and legal arguments that are relevant to each motion. For this reason, the Court emphasizes that this Opinion and Order is intended to be read and understood as a whole and in its entirety.

> *Conduct including Canon 3(B)(7) which provided: "A judge shall not
> initiate, receive, permit, or consider communications made to the judge
> outside the presence of the parties or their representatives concerning a
> pending or impending proceeding[.]"*

(emphasis added). The Superseding Indictment also makes repeated references to "ex

parte" communications, *see* ¶¶ 28, 41, 47, 53, and, according to the defendant, also makes

indirect references to the judicial code and the defendant's duty with respect to it. (*See* ¶¶

14-16, 24(1), and 51). The defendant requests that the Court strike these direct and

indirect references to the judicial code as "irrelevant, immaterial, prejudicial surplusage."

(Doc. No. 32 at 23.)

"Rule 7(d) of the Federal Rules of Criminal Procedure makes the striking

of surplusage permissive but not mandatory." *United States v. Kemper*, 503 F.2d 327, 329

(6th Cir. 1974). *See United States v. Neller*, Nos. 97-3630, 97-3631, 97-4053, 99-3252,

2000 U.S. App. LEXIS 22414, at *5 (6th Cir. Aug. 25, 2000). A court should grant a

motion to strike "only where it is clear that the language is irrelevant and prejudicial."

*Neller*, 2000 U.S. App. LEXIS 22414, at *5. Furthermore, the Sixth Circuit has observed

that "[…] Rule 7(d) may be properly invoked only when the indictment contains non-

essential allegations that could unfairly prejudice the jurors. The rule has been 'strictly

construed against striking surplusage.'" *United States v. Miller*, No. 86-1427, 1987 U.S

App. LEXIS 1825, at *8 (6th Cir. Feb. 5, 1987) (citing *Kemper*, 503 F.2d at 329).

According to the defendant, the government's theory of prosecution has

always been that what it perceives as judicial code violations may provide the basis for

the criminal charges set forth in the Superseding Indictment. This, the defendant insists,

is an improper use of the judicial code. The defendant observes that the Preamble to the Ohio Code of Judicial Conduct clearly prohibits such a use:

> The Code is designed to provide guidance to judges and candidates for judicial office and to provide a structure for regulating conduct through disciplinary agencies. *It is not designed or intended as a basis for civil liability or criminal prosecutions. Furthermore, the purpose of the Code would be subverted if the Code were invoked by lawyers for mere tactical advantage in a proceeding.*

(Ohio Code of Judicial Conduct, PREAMBLE (emphasis added)). Further, the defendant highlights the fact the Ohio State Constitution vests in the Supreme Court the exclusive jurisdiction over all matters relating to the admission to practice law, and the discipline of those so admitted. Ohio Const. Art. VI, Sec. 2(b)(1)(g). *See, generally, Fieger v. Thomas*, 74 F.3d 740, 745 (6th Cir. 1996) ("The policies of comity and federalism counsel that because [the state] has such an important interest in regulating its own bar, a state forum should have the first opportunity to review [the state's] rules of lawyer conduct and procedures for lawyer discipline.") These considerations, the defendant insist, counsel against permitting the government to use the judicial code to support a finding of criminal liability, and mandate that any reference to the code be stricken from the Superseding Indictment.

The government posits that evidence that the defendant violated the judicial code is highly relevant to the issues of materiality and intent, and as a result, it cannot be considered surplusage. *See United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993) ("[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant").). With respect to materiality, the

12

government argues that it must prove that the defendant made a material misstatement, representation, promise or omission." It goes on to note that "[i]f defendant had no legal duty to disclose the ex parte communications, it follows that his failure to inform the other litigants of any ex parte communication and the effect on his judicial actions would not qualify as a material omission. Absent a material omission, there is no mail fraud or mail fraud conspiracy." (Doc. No. 43 at 9.)

The courts are split on whether 18 U.S.C. § 1346 requires the existence of a legal duty under state law, and this split, while recognized in *Skilling*, was never resolved by the high court. *See Skilling*, 130 S. Ct. at 2928 n.36 (collecting cases). Moreover, the Sixth Circuit has not ruled on the issue. This Court finds, however, that the more persuasive position rests with cases, such as *United States v. Brumley*, 116 F.3d 728 (5th Cir. 1997), which have held that there must be a violation of a duty imposed under state law. *Id.* at 734.

In *Brumley*, the defendant argued that the government had misused statutes, such as 18 U.S.C. § 1346, to "prosecute a state employee for ethical lapses." *Id.* at 730. The court examined the relationship between the federal honest services fraud statute and state law. The court found that any deprivation of honest services by a public employee must be based on the defendant's violation of a state law duty:

> Under the most natural reading of the statute, a federal prosecutor must prove that conduct of a state official breached a duty respecting the provision of services owed to the official's employer under state law. Stated directly, the official must act or fail to act contrary to the requirements of his job under state law. This means that if the official does all that is required under state law, alleging that the services were not otherwise done "honestly" does not charge a violation of the mail fraud statute. The statute contemplates that there must be a breach of a state-owed duty.

13

*Id.* at 734. Notwithstanding this analysis, the court rejected the defendant's suggestion that his honest services mail fraud conviction was supported by "ethical lapses," finding that the district court properly determined that the defendant's conduct violated a provision of the Texas penal code, which criminalized bribery by a public official. *Id.* at 735.

Like the court in *Brumley*, this Court finds that the legal duty underlying a charge of honest services fraud must be rooted in state law. [9]  Having determined that a duty under state law is necessary under § 1346, the Court takes up the defendant's argument that Ohio's judicial code cannot supply that necessary duty. In *United States v. Marlinga*, No. 04-80372, 2006 WL 2086027 (E.D. Mich. July 25, 2006), the defendant, a former state prosecuting attorney, was charged with honest services fraud under § 1346 and other crimes arising from various campaign contribution improprieties. The government attempted to rely on the Michigan Rules of Professional Conduct to support a finding of a legal duty to the citizens, but admitted that the Michigan Code, like Ohio's judicial code, did not have the force of law. Finding no legal duty rooted in Michigan law, and further finding no common law fiduciary duty of honesty owed by prosecutors, the court dismissed the count under § 1346. *See id.* at *12.

In a case with a remarkably similar fact pattern as the within case, *United States v. Delaughter*, No. 3:09-026HD-SAA-2, 2009 WL 1424424 (N.D. Miss. May 18, 2009), a state judge alleged that the government was attempting to turn his ex parte

---

[9] In *United States v. Panarella*, 277 F.3d 678, 693-94 (3d Cir. 2002), the court, while it refused to reach the question of whether a state law violation is always necessary, observed that "[i]n our view, use of state law as a limiting principle defining the scope of honest services fraud in close cases better addresses [] federalism concerns than does the limiting principle of misuse of office for personal gain [...]."

communications into federal crimes under §§ 1341 and 1346. Like the present case, the indictment in *Delaughter* contained the allegation that the defendant had violated the governing state judicial code. The court found that the indictment was sufficient because the Mississippi statutory code prohibited bribery, and the defendant's alleged conduct constituted bribery under state law.[11] *Id.* at *2. The court further found that the fact that the indictment did not cite the state bribery statute was not fatal because the defendant was not misled or prejudiced. *Id.* at *3 (citing *Williams v. United States*, 168 U.S. 382, 389 (1897).

  The government insists that it must rely on the judicial code to supply the necessary intent. While there may be some probative value to the fact that the Ohio Supreme Court has promulgated a code that prohibits ex parte communications and that the defendant, as a judge, would have known that he was not permitted to engage in such conduct, the code is not legislative, and, therefore, does not have the force of law. As such, it cannot support a finding of intent to defraud, an essential element of the crime of honest services mail fraud.[12] It, therefore, cannot form the basis for a violation of 18 U.S.C. § 1346.[13]

  Still, the government need not resort to Ohio's judicial code to support a finding of a legal duty inasmuch as the Ohio Revised Code criminalizes the accepting of

---

[11] The court did not, however, address the question of whether the reference in the indictment to the state judicial code should be struck.

[12] This is not to say that the conduct underlying the alleged unethical is not relevant. The fact that the defendant is alleged to have engaged in private communications with a third party regarding cases pending before his court, and allegedly agreed to provide the third party special consideration in these cases, is most certainly relevant to the question of whether the defendant intended to defraud.

[13] The government cites the Court to cases wherein courts rely on banking and administrative regulations. Such  regulations are legislative in nature and have the force of law.

a bribe by a public official. *See* Ohio Rev. Code § 2921.02(B).[14] *See, e.g, Brumley,* 116 F.3d at 735; *Delaughter,* 2009 WL 1424424, at *2. Ohio law further prohibits a public official from using his office to secure anything of value for personal gain, and places the official in a fiduciary relationship with the public. *See* Ohio Rev. Code § 102.03.[15] *Compare United States v. Murphy*, 323 F.3d 102, 104 (3d Cir. 2003) (In mail fraud action, the government cannot rely on the state bribery statute, standing alone, to provide the necessary fiduciary duty between the defendant and the public). Because state law supplies the necessary legal duty, the government need not resort to the judicial code to support its prosecution under § 1346.[16]

As a judge and a public official, the defendant had a legal duty not to take anything of value in exchange for influence over his decision-making duties. If he took a bribe in exchange for promised influence over certain of his decisions, and he failed to fully disclose the promised influence, his conduct would have violated both Ohio statutes.

---

[14] Section 2921.02(B) provides: "No person, either before or after he is elected, appointed, qualified, employed, summoned, or sworn as a public servant or party official, shall knowingly solicit or accept for himself or another person any valuable thing or valuable benefit to corrupt or improperly influence him or another public servant or party official with respect to the discharge of his or the other public servant's or party official's duty."

[15] Specifically, § 102.03(D) provides that: "No public official or employee shall use or authorize the use of the authority or influence of office or employment to secure anything of value or the promise or offer of anything of value that is of such a character as to manifest a substantial and improper influence upon the public official or employee with respect to that person's duties." Likewise, § 102.03(E) provides: "No public official or employee shall solicit or accept anything of value that is of such a character as to manifest a substantial and improper influence upon the public official or employee with respect to that person's duties."

[16] The Court is aware of at least one post-*Skilling* decision that has found that there longer needs to be a fiduciary duty to support a conviction for honest services fraud. *See Milovanovic*, 627 F.3d at 412. This Court does not, however, read *Skilling* as extinguishing the need for a fiduciary relationship. Indeed, in his concurring opinion, Justice Scalia observed that "[t]he Court maintains that 'the intangible right of honest services' means the right not to have one's fiduciaries accept 'bribes or kickbacks.'" *Skilling,* 130 U.S. at 2935 (Scalia, concurring). In any event, the Court finds any necessary fiduciary relationship firmly cemented in Ohio statutory law.

16

Such a conclusion would seem to render the language in the Superseding Indictment relating to the judicial code irrelevant and unnecessary surplusage. The government argues, however, that the language is also critical to establishing "materiality." The Court disagrees. "A statement, representation, or omission is 'material if it had a natural tendency to influence or was capable of influencing a decision or action, whether or not it actually influenced or deceived anyone.'" *United States v. Brannon*, No. 1:03-CR-98, 2004 U.S. Dist. LEXIS 7417, at *15 (E.D. Tenn. Apr. 27, 2004) (quoting Devitt and Blackmar § 40.03). *See United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007); *United States v. Daniel*, 329 F.3d 480, 486-87 (6th Cir. 2003) (Material misrepresentations or omissions are those that the defendant "knew were false and that would have affected a reasonable person's actions in the situation."). The material omission here is the defendant's failure to disclose to AHB and the public that he allegedly received a campaign contribution in exchange for a promise of certain future official action, which included the rulings in the AHB case. If the government can prove this at trial, this evidence, alone, would be sufficient to establish that the non-disclosure was material because this knowledge would have had the natural tendency to influence the behavior of the public and AHB. *See, e.g., United States v. Foxworthy*, 334 Fed. Appx. 363, 366 (2d Cir. 2009) (finding that honest services fraud conviction of a state senator was properly supported by the evidence where the failure to advise the public of a bribery scheme, standing alone, was sufficient to support a finding of a material omission).

Because the Court finds that the judicial code does not have the force of law, cannot be used to support the finding of a legal duty under state law, and does not

17

contain provisions that the government must properly prove at trial, it is non-essential. *See Moss*, 9 F.3d at 550. The Court further finds that any references to the judicial code in the Superseding Indictment would be unduly prejudicial to the defendant because they may have the effect of confusing the jurors, and misleading them into thinking that the defendant is on trial for ethical violations. Consequently, the court shall exercise its discretion and strike all references to the judicial code, as well as all references to the term "ex parte" in the Superseding Indictment inasmuch as these references would be confusing and might suggest unethical behavior.

Nonetheless, while the Court is inclined to excise direct references to the judicial code, it is unconvinced that it must excise all of the "indirect" references cited by the defendant. Most of these references simply describe the conduct that facilitated the bribery scheme without any reference to the judicial code, and are both relevant and non-prejudicial. (*See* Superseding Indictment at ¶¶ 14-16, 24(1), and 51.)

In so ruling, the Court finds that, as excised, the Superseding Indictment is sufficient, and the absence of the specific state law that sets forth the underlying state law duty does not render it deficient. *See United States v. Caldwell*, 302 F.3d 399, 409 (5th Cir. 2002) (An indictment need not specify the state law source of the right to honest services, as long as the Government "prove[s] that the defendant deprived the employer of such services."); s*ee also* Fed. R. Crim. P. 7(c)(2) ("Unless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground

to dismiss the indictment or information or to reverse a conviction.").[18]

In *Williams*, the Supreme Court explained:

> It is wholly immaterial what statute was in the mind of the District Attorney when he drew the indictment, if the charges made are embraced by some statute in force. The endorsement on the margin of the indictment constitutes no part of the indictment and does not add to or weaken the legal force of its averments. We must look to the indictment itself, and, if it properly charges an offense under the laws of the United States, that is sufficient to sustain it, although the representative of the United States may have supposed that the offense charged was covered by a different statute.

*Williams*, 168 U.S. at 389. This sentiment was echoed by the Court 45 years later:

> In order to determine whether an indictment charges an offense against the United States, designation by the pleader of the statute under which he purported to lay the charge is immaterial. He may have conceived the charge under one statute which would not sustain the indictment, but it may nevertheless come within the terms of another statute.

*United States v. Hutcheson*, 312 U.S. 219, 229 (1941). *See United States v. Groff*, 643 F.2d 396, 402 (6th Cir. 1981) ("The citation of erroneous statutory provision is not fatal to the conviction, then, if the defendant knew the charges against him.").

In *Groff*, the Sixth Circuit held that the fact that an indictment erroneously identified Michigan statutory law as forming the basis for the charges, instead of Ohio statutory law, did not render it fatally deficient. Noting that the court must "look at the facts alleged in the indictment to determine whether an offense has been properly charged," the court found that the factual statements in the indictment sufficiently alleged

---

[18] Further, the Notes to Rule 7(c) provide, in part, "The law at present regards citations to statutes or regulations as not part of the indictment. A conviction may be sustained on the basis of a statute or regulation other than that cited. The provision of the rule, in view of the many statutes and regulations, is for the benefit of the defendant and is not intended to cause a dismissal of the indictment, but simply to provide a means by which he can be properly informed without danger to the prosecution." (Internal citations omitted.)

a violation under Ohio statutory law. *Id*. at 402.

Here, the factual statements in the Superseding Indictment clearly support a charge of bribery under Ohio Rev. Code § 2921.02(B). (*See* Superseding Indictment at ¶¶ 28-41.) Moreover, as an elected official, the defendant should have been aware of the criminal prohibitions and the civil responsibilities under the law regarding the acceptance of anything of value that would influence his decision-making abilities. *See, e.g., Delaughter*, 2009 WL 1424424, at *2 (In an honest services fraud case, even though the statutory provision upon which the legal duty rested was not cited in the indictment, the court found the indictment sufficient, observing that the defendant, an elected official, "should have known that the alleged conduct would also violate Mississippi Code Annotated Section 97-11-53, which makes it a felony under state law for a public official to offer or agree to receive any intangible thing of value as an incentive for an official act.").

Thus, and for all of the foregoing reasons, the defendant's alternative motion to strike is GRANTED in part. Specifically, the Court directs that the following language be struck from the Superseding Indictment: paragraph 17, sentence three, and the words "ex parte" found in paragraphs 28, 41, 47, and 53.

The government also seeks to offer the testimony of expert Lori Brown on the subject of the Ohio Code of Judicial Conduct. The defendant has moved to exclude this testimony, as well as any reference to the judicial code. In light of the Court's ruling herein, the Court is not convinced that this evidence should be injected into this action. The Court will, however, hear oral argument on the defendant's motion in limine at the final pre-trial on May 27, 2011.

**Conclusion**

For all of the foregoing reasons, the defendant's motion to dismiss the Superseding Indictment is DENIED, his alternative motion to strike portions of the Superseding Indictment as surplusage is GRANTED in part as set forth in this Opinion and Order.

**IT IS SO ORDERED.**

Dated: May 26, 2011

_____

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**