**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.1:10CR390 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION & ORDER |
| | ) | |
| | ) | |
| STEVEN J. TERRY, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of Defendant Steven J. Terry (the defendant) in limine to preclude the United States of America (the government) from offering the testimony of Lori Brown, a purported expert on the subject of the Ohio Code of Judicial Conduct, and from making any reference to the judicial code. (Doc. No. 42.) Also before the Court is the government's motion in limine to prevent the defendant from offering various types of evidence at trial. (Doc. No. 47.) These motions have been fully briefed, and were argued at motion hearings on May 4, 2011 and May 27, 2011.

**Background**

The facts and history of this case have been set forth in previous Opinions and Orders, familiarity with which is presumed. For purposes of framing the present in limine motions, it is sufficient to state that the defendant, a sitting common pleas judge, is alleged to have taken a bribe in exchange for the performance of his official duties. He is charged with conspiracy to commit mail fraud and honest services mail fraud, in violation

of 18 U.S.C. § 1349, mail fraud, in violation of 18 U.S.C. § 1341, and honest services mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346.

The Superseding Indictment made reference to the Ohio Code of Judicial Conduct, and the defendant's duties thereunder, specifically, the duty not to engage in ex parte communications. (Doc. No. 24, Superseding Indictment at ¶ 17.) In a prior ruling, the Court excised all mention of the judicial code and all references to communications being "ex parte." The defendant now moves to preclude the government from offering any evidence relating to the judicial code and, specifically, from offering the expert testimony of Lori Brown. The defendant represents that this evidence is irrelevant to the underlying charges, and its admission would be unfairly prejudicial.

The government also seeks to exclude certain evidence from trial. Based upon representations made by defense counsel during the May 4, 2011 motion hearing and in certain pre-trial briefs, the government surmises that the defendant may seek to admit certain evidence that the government views as irrelevant and inadmissible. Specifically, the government seeks a ruling that precludes the defendant from offering evidence concerning his own lawfulness and non-corrupt conduct, the negligence of American Home Bank (AHB) in failing to detect fraud or mitigate its losses, the government's charging decisions with respect to others who may have engaged in conduct similar to that with which the defendant is charged, and the government's decision not to report the defendant's alleged misconduct to the Ohio Office of Disciplinary Counsel.

**Legal Standards**

<u>Motion in Limine Standard</u>

Although not explicitly authorized by the Federal Rules of Evidence or the Federal Rules of Civil Procedure, the practice of ruling on motions in limine "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Motions in limine allow the court to rule on evidentiary issues prior to trial in order to avoid delay and focus pertinent issues for the jury's consideration. *See United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999); *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997).

Courts should exclude evidence on a motion in limine only when it is clearly inadmissible. *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). If the court is unable to determine whether or not certain evidence is clearly inadmissible, it should defer ruling until trial so that questions of foundation, relevancy, and potential prejudice can be evaluated in proper context. *Id*. Ultimately, the determination whether to grant or deny a motion in limine is within the sound discretion of the trial court. *Goldman v. Healthcare Mgmt. Sys., Inc.*, 559 F. Supp. 2d 853, 858 (W.D. Mich. 2008) (citing *United States v. Certain Land Situated in the City of Detroit*, 547 F. Supp. 680, 681 (E.D. Mich. 1982).). In limine rulings are preliminary, and the district court may change its ruling at trial for any reason it deems appropriate. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (internal citations omitted).

<u>Federal Rules of Evidence</u>

All relevant evidence is admissible and evidence that is not relevant is not admissible. Fed. R. Evid. 402. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The relevancy standard is liberal. *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579, 587 (1993). However, relevant evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of the evidence." Fed. R. Evid. 403.

**Analysis**

*The defendant's Motion in Limine to Exclude Evidence of Judicial Code Violations*

In a decision dated May 26, 2011, the Court ruled that the judicial code could not provide the legal duty necessary to support a conviction for honest services fraud under 18 U.S.C. § 1342, and that it could not support an essential element of the offense because it did not have the force of law. Further, the Court found that any reference to the judicial code in Superseding Indictment would be unduly prejudicial because it would have the effect of confusing the jurors and misleading them into thinking that the defendant is on trial for ethical violations. (Doc. No 54 at 18.) It was for these reasons that the Court ruled that references to the judicial code be excised from the Superseding Indictment.

4

In his motion in limine, the defendant now seeks to preclude the government from offering at trial any evidence regarding the judicial code. The Court's prior determination that the judicial code should be struck from the Superseding Indictment does not necessarily foreclose the possibility that the judicial code could come in as evidence at trial. The question the Court must now answer is whether such evidence is legally relevant, and whether its probative value is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 402 and 403.

On April 20, 2011, the government submitted a letter to defense counsel, pursuant to Fed. R. Crim. P. 16, wherein it advised defense counsel of its intentions to offer the testimony of its expert, Lori Brown, on the subject of the judicial code governing the conduct of Ohio's judges in effect prior to March 1, 2009. (Doc. No. 42-1 at 2.) The defendant argues that evidence relating to any breach of the judicial code is not "relevant to the criminal offenses charged and the admission of this evidence and an opinion concerning ethical misconduct of the Defendant would unfairly place the Defendant's character in issue and thereby prejudicially deny the Defendant his fundamental right to a fair trial with due process of law […]." (*Id*.) The government, however, underscores the fact that Ms. Brown will not testify that the defendant violated any particular ethical rule. Rather, she is expected to testify that certain conduct violates the code, and is further expected to testify as to the disciplinary consequences of violating these code provisions. (Doc. No. 43 at 15; Doc. No. 42-1 at 3.)

The government contends that evidence regarding the judicial code, including the code's prohibition against ex parte communications, is admissible as "intrinsic" evidence in that it is "part and parcel" of the charged offenses. Intrinsic, as

5

opposed to extrinsic, evidence is "inextricably intertwined" with the crime charged or is "part of a single criminal episode" and is beyond the reach of Rule 404(b) of the Federal Rules of Evidence. *See United States v. Everett,* 270 F.3d 986, 992 (6th Cir. 2001); *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995). Alternatively, it argues that the evidence is admissible under Rule 404(b) as "other acts" evidence.

That the Ohio Supreme Court promulgated rules prohibiting judges, except in limited circumstances, from having ex part communications with parties and non-parties, and the defendant knew of the judicial code and allegedly engaged in such communications, is at least some evidence of the defendant's intent to defraud. Thus, it has probative value. As this Court has previously determined, however, the judicial code does not have the force of law and cannot, therefore, support a finding of intent to defraud, an essential element of the crime of honest services mail fraud. (Doc. No. 54 at 15.)

The government cites *United States v. Anderson*, 533 F.3d 623 (8th Cir. 2008), for the proposition that the judicial code may be admitted to demonstrate intent to defraud. In *Anderson*, the defendant was charged with insider trading and money laundering. At trial, the district court permitted evidence relating to the defendant's company's internal policy regarding insider trading. On appeal, the Eighth Circuit ruled that the evidence was properly admitted to demonstrate "the defendant's knowledge of insider-trading laws and of his intent to defraud." *Id*. at 632.

*Anderson* is distinguishable, in part, and is also inapposite, in part. The internal policy in *Anderson* closely paralleled insider trading laws, specifically Rule 10b-5, which was promulgated by the Securities Exchange Commission (SEC) pursuant to its

6

rulemaking power under 10(b) of the Securities Exchange Act. While there may be laws that parallel some aspects of the judicial code (i.e., bribery laws, disclosure laws, conflict laws), there are no parallels in the law with respect to ex parte communications. Thus, evidence that the judicial code prohibits such conduct would not be admissible to demonstrate the defendant's knowledge of the law. *Compare Anderson*, 533 F.3d at 632.

The court in *Anderson* also held that the internal policy was admissible to prove intent to defraud. Applying *Anderson*, a non-honest services fraud case, to the facts of the present action to prove intent, however, would likely violate the Supreme Court's decision in *Skilling v. United States*, 130 S. Ct. 2896 (2010), wherein the Supreme Court warned against permitting convictions under 18 U.S.C. § 1342 based upon "amorphous" conduct, including "some schemes of non-disclosure and concealment of material information." *Id*. at 2932. Admission of such evidence runs the risk that the defendant would be convicted for violating ethical rules, instead of engaging in a bribery scheme that utilized the federal mail system. Inasmuch as the government may still offer evidence of the underlying conduct, the private phone calls between the defendant and Russo (a non-party to the AHB actions) wherein the two discuss the AHB cases and particular rulings, which, if credited by the jury, can demonstrate fraudulent intent, the Court sees no reason why the judicial code should be admitted.

Even if Court were to find that the judicial code could be offered as evidence of intent to defraud, it would also find, however, that the probative value would not substantially outweigh the danger of unfair prejudice, confusion of the issues, and the potential to mislead the jury under Federal Rule of Evidence 403. Here, there is tremendous concern that the introduction of evidence regarding judicial code violations would cause the jury to view the defendant as an unethical judge who might be more inclined than others to engage in a bribery scheme. Further, as previously stated, the evidence might also tend to confuse the jury by suggesting that the federal government, who has no authority to prosecute potential ethical violations of judges and attorneys, is attempting to do just that. In addition, the Court finds that the admission of this evidence would result in an unnecessary "mini-trial" on the issue of the alleged judicial code violations that would distract from the central focus of the case. While a limiting instruction could be provided that would advise the jury that violations of the judicial code do not constitute crimes and that the jury may only consider evidence of such violations as it relates to the defendant's intent to defraud, the Court finds that such an instruction is not likely to overcome the potential for substantial prejudice to the defendant.[1]

---

[1] Though the Court believes that the evidence is not properly offered under Rule 404(b), the analysis under the Rule 404(b) three part test is the same. *See United States v. Allen*, 619 F.3d 518, 523 (6th Cir. 2010) (citing *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001); *United States v. Trujillo*, 376 F.3d 593, 605 (6th Cir. 2004) (quoting *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003)). With respect to the first factor, the government has identified evidence (including two phone calls between the defendant and Russo) which, if admitted and credited by the jury, would establish that the defendant engaged in ex parte communications with Russo regarding rulings in the AHB cases. Thus, the evidence is sufficient to establish the underlying code violations. As for the second factor, the Court finds that the evidence has probative value, though it is not required or necessary to prove an essential element of the offense of honest services fraud. Third, the evidence, even crediting its probative value, is not admissible because its probative value is not substantially outweighed by the unfair prejudice, as outlined above.

The Court finds, therefore, that the judicial code is inadmissible, and that, even if it were admissible, its probative value would not substantially outweigh its prejudicial effect.[2] The defendant's motion in limine to preclude Ms. Brown from testifying on the subject of the Ohio Code of Judicial Conduct, and to exclude all evidence relating to the judicial code, is GRANTED. Of course, if the defendant offers evidence that ex parte conversations, such as the ones recorded between himself and Russo, were appropriate, this would open the door to evidence regarding the judicial code's treatment of such conversations.

### The Government's Motion to Preclude "Good Acts" Evidence and Evidence Relating to the Defendant's Appointment to the Common Pleas Court

The government moves to preclude the defendant from offering any evidence as to the "good deeds" of himself or his mother. Specifically, the government seeks to exclude any evidence regarding the defendant's work ethic, comments from litigators appearing in his court, and his mother's history in the Civil Rights movement. The government claims that this evidence is improper character evidence under Federal Rule of Evidence 405(a).

---

[2] In reaching this conclusion, the Court distinguishes its recent ruling in *United States v. McCafferty*, Case No. 1:10CR387. There, the defendant, a former common pleas judge, was accused of lying to the FBI, in violation of 18 U.S.C. § 1001. The government offered the testimony of Ms. Brown as to the impropriety of a judge engaging in ex parte communications under the judicial code to show the defendant's motive for lying to the FBI. It was the government's theory that the defendant lied to the FBI because she feared that she would be disciplined by the Ohio Supreme Court for alleged ethical violations relating to her ex parte communications. The Court permitted the testimony (with a limiting instruction) under Rule 404(b) as evidence of motive because it provided an explanation as to why the defendant may have felt that she could not be truthful during her FBI interview, and the existence of the possible ethical violations was highly probative to the government's case.

Rule 405 governs the use of character evidence and provides that, generally, evidence of a defendant's character must be presented in the form of opinion or reputation testimony. Fed. R. Evid. 405(a). Specific instances of personal conduct are only admissible in limited circumstances. *See* Fed. R. Evid. 405(b). Further, "evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." *United States v. Daulton*, 266 Fed. Appx. 381, 386 (6th Cir. 2008) (quoting *United States v. Dobbs*, 506 F.2d 445, 447 (6th Cir. 1975)). *See United States v. Hill*, 40 F.3d 164, 169 (6th Cir. 1994) ("Specific instances of law-abidingness […] would have been admissible only if law-abidingness was an essential element of the charge or defense […].")

The defendant represents that he does not intend to offer character evidence for the purpose of proving that the defendant is a "'good guy' and acted in conformity therewith […]." (Doc. No. 48 at 7.) The Court, therefore, sustains the government's objection as to "good guy" evidence.

Nonetheless, the defendant suggests that he plans to offer evidence of his "lifetime and life history of public service" and his mother's past works and "network of friends" in order to rebut the government's case. The defendant explains that it is the government's theory that the defendant entered into a corrupt agreement with Frank Russo wherein the defendant sought Russo's support and backing to obtain and retain his seat on the common pleas bench. (*See* Superseding Indictment at ¶¶ 4-5, 10, 13.) The defendant insists that his decision to seek public office was predicated upon his "lifetime and life history of public service," and that the fact that his mother and her friends were early supporters of former Governor Ted Strickland was crucial in obtaining the appointment from Governor Strickland. He maintains that "[t]he jury is entitled to know

10

that the Defendant was not just some no-name unqualified candidate seeking to buy a position on the Bench by selling his soul to Frank Russo […]." (*Id.* at 7.)

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). At the motion hearing on May 27, 2011, the government confirmed that its theory is that either the defendant *needed* Russo's support, or that he *believed that he needed* such support, in order to obtain and later retain his position. At the risk of stating the obvious, if the government's case is that the defendant *needed* or *believed he needed* Russo's support, the defendant clearly has a right to offer evidence to show that he did not *need* Russo's support.[3]

Specifically, this means that the defendant shall be permitted to offer evidence as to his qualifications to serve as a jurist, including his prior work experience. He will also be permitted to offer evidence as to his mother's "network of friends" and her support of former Governor Strickland. He will not, however, be allowed to offer evidence to show that, on other occasions not relevant to the Superseding Indictment, he engaged in non-criminal behavior. Further, in the interest of ensuring that the defendant's use of such evidence does not exceed the mandates of this Opinion and Order, the

---

[3] The Court distinguishes the government's theory from a theory wherein the defendant merely *desired* Russo's support and knew that such support would involve some sort of quid pro quo arrangement. Under the later theory, evidence that the defendant was otherwise qualified and had other sources of support would be less relevant to a consideration of the charges in issue.

11

defendant shall give advance notice of any such evidence he intends to offer on this subject.

> *Evidence that AHB Failed to Mitigate its Damages or Properly Monitor for Fraud*

The government also argues that the defendant should not be permitted to present defenses that are not relevant to the question of guilt or innocence. According to the government, the defendant should be prevented from offering evidence that AHB was negligent in its failure to discover the alleged fraudulent agreement between the defendant and Frank Russo, or from offering evidence that AHB failed to mitigate its damages.

The defendant represents that he has no intention of offering evidence or argument that would suggest that AHB was negligent in its monitoring of its cases or that it failed to mitigate its damages. The Court, therefore, sustains the government's objection as to "improper defenses." Nevertheless, the defendant states that he plans to offer evidence that the rulings he made with respect to the summary judgment motions in the AHB cases were required as a matter of law because there were genuine issues of material facts.

The Court finds that evidence that the rulings were required as a matter of law is not relevant under Rule 401. While the government must establish the connection between Frank Russo's campaign contribution and the subsequent rulings on summary judgment, the fact that the defendant would have been guided by the law to deny the motions even without the alleged fraudulent deal does not make it any less likely that the rulings were the "quo" for Russo's "quid." The defendant simply cannot benefit from the

fortuity that the rulings may well have been the same with or without the alleged fraudulent deal. Moreover, under Rule 403, admission of such evidence would be unfairly prejudicial to the government because it may confuse the jury by leading them to believe that any possible fraud was harmless because the decisions would have been the same with or without the alleged bribery.

*Evidence Relating to the Government's Charging Decisions*

The government further argues that the defendant should be prohibited from eliciting evidence that other individuals should have been charged in a like manner as the defendant. The government observes that, "[t]hrough pre-trial argument, Defendant has suggested that other individuals were involved in the same type of conduct as Defendant." (Doc. No. 47 at 11.) It maintains that "[t]he government's charging decisions are not proper subjects for cross examination and argument." *United States v. Carneglia*, 2009 WL 185725 (E.D.N.Y. 2009) (quoting *United States v. Re*, 401 F.3d 828 (7th Cir. 2005)). *See also* Sixth Circuit Pattern Jury Instruction 8.08 ("Also remember that whether anyone else should be prosecuted and convicted for this crime is not a proper matter for you to consider. The possible guilt of others is no defense to a criminal charge. Your job is to decide if the government has proved this defendant guilty. Do not let the possible guilt of others influence you decision in any way.")

The defendant states that he "has no intention whatsoever to elicit or present evidence concerning the 'potential criminal liability of others' who received the same endorsements, resources and financial support, like the Defendant, from Frank Russo." (Doc. No. 48 at 11.) Thus, the government's objection, as it relates to evidence that others should have been charged, is sustained. Still, the defendant states that he plans

to offer evidence that, during the time period relevant to the Superseding Indictment, other candidates, like the defendant, "held Frank Russo in high esteem and believed him to be an honest, powerful and influential figure in Democratic Party politics." (*Id.*)

That others sought and obtained Frank Russo's support, and believed him to be an "honest, powerful and influential figure in Democratic politics," is irrelevant to question of whether the defendant is guilty of conspiracy, mail fraud, and honest services mail fraud. The views of others, or the fact that others received Russo's support without engaging in bribery, does not make it any more or less likely that the defendant allegedly agreed to, as the defendant states, "sell his soul" to Russo to get that same help. (*See* Doc. No. 48 at 8.) The defendant shall not be permitted to offer such evidence.

*The Government's Decision not to Report Possible Ethical Violations*

Finally, the government argues that the defendant should not be permitted to offer any evidence relating to the government's decision not to immediately report the defendant's alleged misconduct to the Ohio Office of Disciplinary Counsel. During the May 4, 2011 motion hearing, defense counsel suggested that the government did not believe that the defendant's conduct in the AHB litigation was improper because the government did not report the conduct to disciplinary counsel for the Ohio Supreme Court.

The defendant states that he does not intend to offer any evidence regarding, or make reference to, the Ohio Code of Judicial Conduct and the Office of Disciplinary Counsel. Further, the Court has ruled that it will not permit any evidence relating to the judicial code. As such, this issue is moot. Of course, whether the

14

government owed a duty to report the defendant for alleged ethical violations is irrelevant to the present litigation, and evidence that the government failed to make such a report will not be permitted at trial.

For all of the foregoing reasons, the defendant's motion in limine is GRANTED, and the government's motion in limine is GRANTED in part and DENIED in part, as set forth in this Opinion and Order.

**IT IS SO ORDERED**.

Dated: May 31, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**