## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.1:10CR390 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION & ORDER |
| | ) | |
| STEVEN J. TERRY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Following a jury trial, Defendant Steven Terry was convicted of conspiracy to commit mail fraud, 18 U.S.C § 1341, in violation of 18 U.S.C. § 1349, conspiracy to commit honest services mail fraud, 18 U.S.C. §§ 1341 and 1346, in violation of 18 U.S.C. § 1349, and honest services mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346. On October 4, 2011, the Court sentenced the defendant to a term of incarceration of 63 months on each count, to run concurrently. (Doc. No. 94.)

This matter is now before the Court on the defendant's motion for release on bond pending appeal. (Doc. No. 79.) The government opposes the motion. (Doc. No. 87.) For the reasons set forth below, as well as the reasons set forth in numerous prior Opinions and Orders, the defendant's motion is DENIED.

The terms of the defendant's request for release pending appeal are governed by 18 U.S.C. § 3143(b)(1), which provides:

> the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an


> appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—
>
> > (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> >
> > (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
> >
> > > (i) reversal,
> > >
> > > (ii) an order for a new trial,
> > >
> > > (iii) a sentence that does not include a term of imprisonment,
> > >
> > > or
> > >
> > > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
>
> If the judicial official makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title […].

This statute creates a presumption against release pending appeal. *United States v. Scherer*, 101 Fed. Appx. 1002, 1003 (6th Cir. 2004) (citing *United States v. Vance*, 851 F.2d 166, 168-69 (6th Cir.), *cert. denied*, 488 U.S. 893 (1988)).

Notwithstanding the government's suggestion to the contrary, the Court finds that this defendant is not likely to flee, nor would his release pending appeal pose a risk to the community. The defendant was not convicted of any crimes of violence, he has complied with all of the conditions of his bond to date, and has presented himself for all necessary court appearances. Further, he is a life-long resident of Ohio and has strong ties to the community. As such, the sole issue for the Court on the defendant's motion for a

stay of sentence is whether the defendant's appeal raises a substantial issue under the bail statute.

The defendant claims that it does, and identifies a number of issues relating to his convictions for honest services mail fraud and conspiracy to commit honest services mail fraud, including: (1) the sufficiency of the indictment; (2) the sufficiency of the evidence; and (3) errors relating to the Court's instructions on the crime of honest services mail fraud.

Of course, the "mere identification of issues does not demonstrate that an appeal establishes a substantial question entitling the defendant to release pending appeal under the Bail Reform Act, 18 U.S.C. § 3143(b)(2)." *United States v. Moore*, 1988 WL 63191, at *1 (6th Cir. June 16, 1988) (citing *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985); *see United States v. Jackson*, 2006 U.S. Dist. LEXIS 50262, at *7-*8 (N.D. Ohio July 24, 2006)). Instead, "an appeal raises a substantial question when the appeal presents a 'close question or one that could go either way' and that the question 'is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor.'" *Pollard*, 778 F.2d at 1182 (quoting *United States v. Powell*, 761 F.2d 1227, 1233-34 (8th Cir. 1985)). As the Sixth Circuit has acknowledged in *Pollard* where, as here, "the district court is familiar with the case, the district court is in an excellent position to determine in the first instance whether the defendant raises a substantial question on appeal." *Pollard*, 778 F.2d at 1182.

The merits of many of the defendant's issues have been exhaustively reviewed by the Court and addressed in two Opinions (*see* Doc. Nos. 54 and 55), and,

with only one exception, the Court will not revisit its analysis and rulings herein. The defendant also raises several new arguments, however, and the Court will briefly address these, as well. Suffice to say, none of these issues represent a "close call" which would warrant this Court finding the existence of substantial questions of law or fact to support the defendant's release pending appeal.

The defendant argues, as he did in pre-trial motions, that the government impermissibly pursued a theory of liability that revolved around ethical violations, undisclosed self-dealings, and misrepresentations. Such "amphorous" conduct, the defendant insists, cannot support a conviction for honest services fraud under *Skilling v. United States*, 130 S.Ct. 2896 (2010). In *Skilling*, the Supreme Court narrowed the reach of the honest services fraud statute, limiting it to fraudulent schemes involving bribes or kickbacks. *Skilling,* 130 S.Ct. at 2931. As the Court previously found, however, the superseding indictment clearly and specifically charged a fraudulent scheme involving bribery and kickbacks. (Superseding Indictment at ¶ 51.) The fact that the charging document alleged that this bribery scheme was carried out through the concealment of material information does not take away from the fact that it satisfied the modest pleading requirements of Rule 7 of the Federal Rules of Criminal Procedure.

Further, to eliminate the risk that the defendant would be convicted on the basis of ethical violations the Court took the extraordinary measure of striking all references to the judicial code of conduct, as well as all references to *ex parte*

communications, from the superseding indictment.[1] In addition, the Court's jury instructions specifically provided that a scheme involving "bribery or kickbacks" was an essential element of the crime of honest services mail fraud. (Jury Instructions at 24.) As the jury is presumed to have followed these instructions, *see United States v. Davis*, 306 F.3d 398, 416 (6th Cir. 2002), the defendant's concern that the jury convicted him on some theory other than one involving bribery or kickbacks is without merit and does not rise to the level of a substantial issue.

The defendant also argues, for the first time, that the government was required to prove an "*explicit* quid pro quo" agreement and that the judicial contributions that the defendant was alleged to have received in exchange for his official actions "were neither federal crimes or 'bribes or kickbacks' within the meaning of *Skilling*." (Mot. at 16.) The Court begins with the requirement of an explicit quid pro quo agreement.[2]

In support of his argument, the defendant relies heavily upon the ruling in *McCormick v. United States*, 500 U.S. 257, 273 (1991). In *McCormick*, the Supreme Court held that campaign contributions can support a Hobbs Act violation only where "they can be proven to have been given in return for the performance of or abstaining from an official act; otherwise any campaign contribution might constitute a violation." *Id.* at 273 (internal quotation and citation omitted). Based upon this language, the

---

[1] The Court based its ruling on a finding that the judicial code was non-essential to the government's case, and would be unduly prejudicial to the defendant. (*See* Doc. No. 54 at 17-19.) The Court also granted the defendant's motion to exclude all evidence relating to the judicial code of conduct from the government's case-in-chief. (*See* Doc. No. 55 at 9.) It was defendant who opened the door to such testimony during his direct examination. While the government cross-examined the defendant as to the judicial code, it did not offer its own evidence on the subject and did not mention the code in closing arguments.

[2] The Court notes that the instruction it gave relating to the existence of a quid pro quo agreement was substantially similar to the instruction requested by the defendant. (*See* Jury Instructions at 24-26; Doc. No. 49, Proposed Jury Instructions at 4.

5

defendant argues that there must be proof of a specific communication by the official as to the details of the bribery agreement. In so arguing, the defendant impermissibly equates "explicit" with "express."

The Supreme Court confirmed its ruling in *McCormick* a year later, but explained that "[t]he official and payor need not state the quid pro quo in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods. The inducement from the official is criminal if it is express or if it is implied from his words and actions, so long as he intends it to be so and the payor so interprets it." *Evans v. United States*, 504 U.S. 255, 274 (1992) (Kennedy, J., concurring). As such, the requirement of explicitness clearly "refers to the promise of official action, not the connection between the contribution and the promise. […] The connection between the explicit promise of official action and the contribution must be proved, but the proof may be circumstantial […]." *United States v. Inzunza*, 638 F.3d 1006, 1014 (9th Cir. 2011) (citing *McCormick*, 500 U.S. at 273, and *United States v. Carpenter*, 961 F.2d 824, 827 (9th Cir. 1992)).

The Court's jury instruction tracked the language in *Evans*, giving effect to the teachings in *McCormick*. Specifically, the Court instructed the jury, in part, that:

> Bribery and kickbacks involve the exchange of a thing or things of value for official action by a public official, in other words, a quid pro quo (a Latin phrase meaning "this for that" or "these for those"). Bribery and kickbacks also include offers and solicitations of things of value in exchange for official action. That is, for the payor, bribery and kickbacks include the offer or agreement to provide a thing of value to a public official in exchange for official action. For the public official, bribery and kickbacks include the public official's solicitation or agreement to accept a thing of value in exchange for official action.

> The public official and the payor need not state the quid pro quo in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods. Rather, the intent to exchange may be established by circumstantial evidence, based upon the defendant's words, conduct, acts, and all the surrounding circumstances disclosed by the evidence and the rationale or logical inferences that may be drawn from them.

(Jury Instructions at 25.) The Court further instructed the jury that "[p]ublic officials may lawfully receive a campaign contribution so long as it is not solicited or received in exchange for official acts." (Jury Instructions at 27.) Having sufficiently set forth the requirement of an explicit quid pro quo agreement and, further, having provided for "lawful contributions," the Court's jury instructions were proper and do not create a substantial issue for review. *See, e.g., Ryan v. United States*, 759 F. Supp. 2d 975, 990 (N.D. Ill. 2010) (denying motion for release on bond pending appeal where similar honest services instructions tracked Justice Kennedy's language in *Evans* relating to the explicit quid pro quo arrangement); *see also United States v. Blandford*, 33 F.3d 685, 696 (6th Cir. 1994) ("Put simply, *Evans* instructed that by 'explicit' *McCormick* did not mean 'express.'")

Moreover, there was more than sufficient evidence offered at trial to establish the explicit quid pro quo agreement between then Cuyahoga County Auditor Frank Russo and the defendant. Russo testified that he expected something in return from the financial and other assistance he provided the defendant in his campaign. (Doc. No. 8 at 290.) The government also introduced intercepted wire communications between Russo and the defendant wherein Russo instructed the defendant on how he was to rule on certain motions pending in the defendant's court. The fact that the defendant, without

7

equivocation, immediately agreed to do as Russo, a non-party to the litigation in question, commanded is strong circumstantial evidence that the defendant understood and agreed to the quid pro quo nature of his relationship with Russo.³

Finally, the defendant argues, again for the first time, that the alleged campaign contributions he received from Russo cannot support a conviction for honest services fraud because he was not personally enriched by these items. There exists a split of authority as to whether an honest services indictment must allege a personal or private gain element of the offense. *See Inzunza*, 638 F.3d at 1017 (collecting cases). The minority view is that a private gain is necessary. *See United States v. Sorich*, 523 F.3d 702, 708-11 (7th Cir. 2008). Other circuits reject this view, either because these courts require the existence of a state-law violation, *see United States v. Brumley*, 116 F.3d 728, 735 (5th Cir. 1997), or because they see such a requirement as unnecessary in light of the statute's intent requirement. *See United States v. Welch*, 327 F.3d 1081, 1106-07 (10th Cir. 2003). It is worth noting that this Court both required the existence of a state law violation, and instructed the jury as to the specific intent necessary under the statute.

While the Sixth Circuit has yet to address the issue, the majority of courts have dispensed with the requirement. *See Inzunza*, 638 F.3d at 1017-18 (campaign contributions can support a conviction for honest services fraud). Even courts that have required a personal benefit to the "offender," have not required a direct payment of cash to the individual in question. In *United States v. McGregor*, 2011 WL 1576950, at *4 (M.D. Ala. Apr. 4, 2011), the court found that campaign contributions could result in a

---

³ The government also introduced a second call wherein the defendant called Russo after he had ruled as Russo had requested to advise Russo that he had completed the task.

8

direct benefit to the candidate, and, therefore, the allegation of the receipt of campaign contributions was sufficient to plead a violation of the honest services fraud statute. A similar conclusion would certainly be proper in the present case. The government presented evidence at trial that the defendant, a relative newcomer to the political scene in Cuyahoga County, was forced to begin his campaign for a second term within months of being appointed to the common pleas bench to fill a vacancy. He turned to Russo, the purported "biggest vote getter" in the county for assistance, and Russo was happy to provide assistance in the form of campaign contributions and other benefits in exchange for official acts. The jury could most certainly have concluded that the defendant personally benefited from this assistance as it was arguably instrumental in the defendant's bid to retain his seat as a common pleas judge.

While debate as to the fine contours of the honest services statute will no doubt continue in the wake of *Skilling*, release pending appeal would not be appropriate in this case, in any event, because the alleged "substantial issues" the defendant offers for this Court's consideration are limited to his convictions for honest services mail fraud and conspiracy to commit honest services mail fraud. The defendant was also convicted of conspiracy to commit mail fraud, and has identified no issues, substantial or otherwise, that would affect that conviction.[4] Because the defendant has failed to show that a resolution in his favor of the "substantial questions" raised in his motion would result either in a reversal of all of his convictions or in a reduced sentence to a term of

---

[4] With respect to Count 1 of the superseding indictment, the jury returned separate verdicts of "Guilty" for the charges of conspiracy to commit mail fraud and conspiracy to commit honest services mail fraud. (*See* Doc. No. 62.)

9

imprisonment less than the total of the time already served plus the expected duration of the appeal process, he is not entitled to a continuation of his bond pending appeal. *See* 18 U.S.C. §3143(b)(1)(B)(i) & (iv); *United States v. Green*, 1998 WL 796118 (10th Cir. Nov. 17, 1998) (citing *Morison v. United States*, 486 U.S. 1306 (1988) (stating that if release is to be based on reversal, defendant must show that all counts for which imprisonment was imposed will be affected); *see, e.g., United States v. Andrews*, 2011 U.S. Dist. LEXIS 100156, at *12 (D.V.I. Sept. 6, 2011) ("Even if Andrews had raised a substantial question as to the wire fraud counts, he still would not meet the standard for release pending appeal because he has not shown that his appeal is likely to result in reversal, a new trial, or a noncustodial or sufficiently reduced sentence as to his convictions for program fraud and inducing a conflict of interest […]."))

For all of the foregoing reasons, as well as the reasons set forth in various pre-trial Opinions and Orders, the defendant's motion for release on bond pending appeal is DENIED.

**IT IS SO ORDERED**.

Dated: October 19, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**